UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAMARCUS JAVELL LEE,

        Plaintiff,                  Case No. 1:25-cv-843

v.                                       Honorable Ray Kent

UNKNOWN PLOWMAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis*. In an order (ECF No. 4) entered on August 7, 2025, the Court directed Plaintiff to file an amended complaint within 28 days. The Court received Plaintiff's amended complaint (ECF No. 6) on August 21, 2025. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Am. Compl., ECF No. 6, PageID.42.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the amended complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]however, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint without prejudice for failure to state a claim.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which Plaintiff complains occurred there. Plaintiff sues the following ICF personnel in their official capacities: Captain Unknown Henry; Lieutenant Unknown Leanhardt (and/or Lieutenant Leon Hardt); Sergeants Unknown Plowman and Unknown Leithem; and Grievance Coordinator M. Demps. (Am. Compl., ECF No. 6, PageID.38.) Plaintiff also sues additional ICF personnel in their

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

official capacities: Grievance Coordinator K. Miller; Deputy Warden Unknown Garcia; Warden D. Bonn; Sergeants Unknown Jenkins and Unknown Counsalium; Registered Nurses Rebecca Hileman and Alisha Nixon; Administrative Assistant K. Towns; Carolyn Nelson; and Corrections Officers Unknown Halstead, Unknown Drescher, and Unknown Keebough.  (*Id*., PageID.37–39.)

Plaintiff sets forth that on an unknown date, Defendants Plowman, Leanhardt, Henry, and Leithem, Jenkins, and Counsalium left Plaintiff in restraints from 9:00 a.m. to 9:00 p.m. (*Id.*, PageID.40.) Plaintiff claims that he was never asked if he wanted to come out of restraints, nor was Plaintiff seen by medical personnel afterwards. (*Id.*) According to Plaintiff, these Defendants left him in restraints "as a form of retaliation because they put [Plaintiff] in a cell [for three] days with ma[c]e all over the room from the previous" inmate. (*Id.*) Plaintiff "wanted to get moved because the ma[c]e was burning [him]." (*Id.*)

Plaintiff claims these Defendants "knew about it [and] did nothing." (*Id.*) Plaintiff alleges that the toilet also did not work. (*Id.*) He avers that all sergeants, lieutenants, and corrections officers "listed in Defendants list" ignored his requests for assistance. (*Id.*) Plaintiff eventually put tissue up to cover his cell window. (*Id.*) Plaintiff claims that "they" then dragged him from the cell naked, sexually assaulted him, and hog tied him. (*Id.*) The cuffs on Plaintiff's wrists and ankles were so tight that his circulation was cut off. (*Id.*)

As set forth above, Plaintiff was left in restraints from 9:00 a.m. to 9:00 p.m. (*Id.*) Plaintiff was then moved to another cell, then hog tied again from 10:00 p.m. to 5:00 a.m. (*Id.*) Plaintiff did not receive any medical attention. (*Id.*)

After the incident, Plaintiff told "medical [and] staff listed" that he had bruises on his ankles and wrists, that his hands were numb, and that his legs felt "funny." (*Id.*) Plaintiff received "nothing for [four] months" until August. (*Id.*) Plaintiff avers that his legs are still in pain. (*Id.*)

4

Plaintiff sent letters to several individuals asking to make a police report. (*Id.*) He alleges that he has body camera footage from non-party Officer Husted "saying they [were] doing what they [were] doing to [Plaintiff] because [Plaintiff] had them gear up." (*Id.*) Plaintiff claims that he was denied the grievance process by Defendants Miller, Garcia, Nelson, and Towns. (*Id.*) Defendant Nixon denied Plaintiff medications for 90 days. (*Id.*) Plaintiff also submitted a grievance against the grievance coordinator for "[lying and] saying [that Plaintiff] never tried to resolve [the] issues with staff." (*Id.*, PageID.40–41.) Plaintiff goes on to state that he did not receive X-rays of his legs until August 14, 2025, and that, at least until August 10, 2025, he did not receive medical attention for his legs or wrist. (*Id.*, PageID.41.)

Based upon the foregoing, Plaintiff states that he is asserting the following claims for relief: (1) First Amendment retaliation claims; (2) Fifth Amendment claims for violations of due process and "rights to representation"; (3) Eighth Amendment claims; and (4) Fourteenth Amendment claims. (*Id.*) The Court also construes Plaintiff's amended complaint to assert constitutional claims regarding the handling of his grievances. Plaintiff seeks injunctive and declaratory relief in the form of having pictures taken of his wrists ankles, and legs; receipt of medical attention; and "to be out of this inhumane treatment [and] living conditions." (*Id.*, PageID.42.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

        **A.**     **First Amendment Retaliation Claims**

Plaintiff sets forth that on an unknown date, Defendants Plowman, Leanhardt, Henry, and Leithem, Jenkins, and Counsalium left Plaintiff in restraints from 9:00 a.m. to 9:00 p.m. (Am. Compl, ECF No. 6, PageID.40.) Plaintiff claims that he was never asked if he wanted to come out of restraints, nor was Plaintiff seen by medical personnel afterwards. (*Id.*) According to Plaintiff, these Defendants left him in restraints "as a form of retaliation because they put [Plaintiff] in a cell [for three] days with ma[c]e all over the room from the previous" inmate. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendants Plowman, Leanhardt, Henry, Leithem, Jenkins, and Counsalium. Plaintiff has not set forth any allegations from which the Court could infer that these Defendants left him in restraints and placed him in a mace-covered cell because Plaintiff had been engaged in any protected conduct. While the Court accepts as true that being placed in restraints and a mace-covered cell was unfavorable to Plaintiff, the Court simply cannot infer anything about Defendants Plowman, Leanhardt, Henry,

7

and Leithem, Jenkins and Counsalium's motivation and reasoning from Plaintiff's vague and conclusory allegations. Plaintiff instead appears to ask this Court to fabricate plausibility to his claims against these Defendants from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that these Defendants acted with retaliatory intent. *See Iqbal*, 556 U.S. at 679. Because Plaintiff has not met that initial burden, the Court will dismiss his First Amendment retaliation claims against Defendants Plowman, Leanhardt, Henry, and Leithem, Jenkins, and Counsalium.

### B. Fifth Amendment Claims

Plaintiff next suggests that he is asserting Fifth Amendment claims for violations of his "due process rights and rights to representation." (Am. Compl., ECF No. 6, PageID.41.) As an initial matter, the Fifth Amendment does not protect the right to representation. Instead, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *See* U.S. Const. amend. VI. Plaintiff's amended complaint, however, is wholly devoid of any allegations suggesting that he was denied the right to counsel during criminal proceedings. Accordingly, any claims regarding a denial of Plaintiff's "rights to representation" will be dismissed.

Moreover, with respect to Plaintiff's invocation of the Fifth Amendment's Due Process Clause, the Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues state actors. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### C. Claims Regarding Handling of Grievances

Plaintiff claims that he was denied the grievance process by Defendants Miller, Garcia, Nelson, and Towns. (Am. Compl., ECF No. 6, PageID.40.) Plaintiff also submitted a grievance against the grievance coordinator for "[lying and] saying [that Plaintiff] never tried to resolve [the] issues with staff." (*Id.*, PageID.40–41.) The Court has construed Plaintiff's amended complaint to assert constitutional claims regarding the handling of his grievances. These allegations, however, do not give rise to any constitutional claim.

Plaintiff has no due process right to file a prison grievance. The courts have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the alleged conduct by these Defendants could not have deprived Plaintiff of due process.

Additionally, Plaintiff's right to petition government is not violated by any failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any actions by these Defendants related to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977), *overruled in other part by Lewis v. Casey*, 518 U.S. 343 (1996). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims regarding his use of the grievance process.

### D.     Eighth Amendment Claims[2]

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

---

[2] Plaintiff vaguely references the Fourteenth Amendment after he indicates that he is asserting Eighth Amendment deliberate indifference claims. (Am. Compl., ECF No. 6, PageID.41.) Plaintiff does not indicate under which provision of the Fourteenth Amendment his purported claims arise. Nevertheless, it appears that Plaintiff refers to the Fourteenth Amendment solely for its incorporation of the relevant provisions under the Eighth Amendment, *see Robinson v. California*, 370 U.S. 660. 667 (1962), as applied to the States. Thus, no further discussion of any Fourteenth Amendment claims is required, and Plaintiff's Fourteenth Amendment claims will be dismissed.

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

      **1.    Medical Care**

Plaintiff contends that he did not receive adequate medical care after he was held in restraints.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

13

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.    Objective Component

As to the objective component, Plaintiff alleges that after the use of restraints, he had bruises on his ankles, numb hands, and that his legs felt "funny." (Am. Compl., ECF No. 6, PageID.40.) Plaintiff does not provide more detail as to how his legs felt "funny." Moreover, superficial physical conditions, such as minor "cuts, bruising, and swelling," do not rise to the level of serious medical needs requiring medical treatment. *See Burgess v. Fisher*, 735 F.3d 462,

477 (6th Cir. 2013). Bruising and swelling are conditions that might well resolve on their own. *See, e.g.*, *Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Likewise, Plaintiff fails to allege any facts suggesting that the numbness in his hands warranted a serious need for medical treatment. For these reasons alone, Plaintiff's Eighth Amendment claims premised upon deliberate indifference to serious medical needs can be dismissed. Moreover, even assuming, without deciding, that Plaintiff has alleged sufficient facts to satisfy the objective component, he also fails to allege sufficient facts for purposes of the subjective component.

### b.  Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837, the Court addresses Plaintiff's allegations below.

Plaintiff's allegations concerning his medical care, or lack thereof, are scant. Plaintiff states that after the use of restraints, he told "medical [and] staff listed" that he had bruises on his ankles and wrists, that his hands were numb, and that his legs felt "funny." (Am. Compl., ECF No. 6, PageID.40.) Plaintiff received "nothing for [four] months" until August. (*Id.*) Plaintiff avers that his legs are still in pain. (*Id.*) He contends that Defendant Nixon denied Plaintiff medications for 90 days. (*Id.*) Plaintiff goes on to state that he did not receive X-rays of his legs until August 14, 2025, and that, at least until August 10, 2025, he did not receive medical attention for his legs or wrist. (*Id.*, PageID.41.)

First, Plaintiff's reference to "medical [and] staff listed" is insufficient to suggest that any of the named Defendants were deliberately indifferent to any of Plaintiff's medical needs.

15

"Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).

Moreover, while Plaintiff alleges that Defendant Nixon denied him medications for 90 days and that he did not receive medical treatment and X-rays until August of 2025, Plaintiff's facts suggest that he is now receiving medical treatment. Even if Plaintiff is not satisfied with the treatment he is receiving, Plaintiff's dissatisfaction amounts to a difference of opinion as to what treatment he should receive. Plaintiff's "disagreement with his physicians [and other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605. Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment claims premised upon deliberate indifference to his medical needs will be dismissed.

### 2. Restraints and Cell Conditions

Plaintiff sets forth that on an unknown date, Defendants Plowman, Leanhardt, Henry, Leithem, Jenkins, and Counsalium left Plaintiff in restraints from 9:00 a.m. to 9:00 p.m. (Am. Compl., ECF No. 6, PageID.40.) Plaintiff claims that he was never asked if he wanted to come out of restraints, nor was Plaintiff seen by medical personnel afterwards. (*Id.*) According to Plaintiff, these Defendants left him in restraints "as a form of retaliation because they put [Plaintiff] in a cell [for three] days with ma[c]e all over the room from the previous" inmate. (*Id.*) Plaintiff "wanted to get moved because the ma[c]e was burning [him]." (*Id.*)

Plaintiff claims these Defendants "knew about it [and] did nothing." (*Id.*) Plaintiff alleges that the toilet also did not work. (*Id.*) He avers that all sergeants, lieutenants, and corrections officers "listed in Defendants list" ignored his requests for assistance. (*Id.*) Plaintiff eventually put tissue up to cover his cell window. (*Id.*) Plaintiff claims that "they" then dragged him from the cell

16

naked, sexually assaulted him, and hog tied him. (*Id.*) The cuffs on Plaintiff's wrists and ankles were so tight that his circulation was cut off. (*Id.*) As set forth above, Plaintiff was left in restraints from 9:00 a.m. to 9:00 p.m. (*Id.*) Plaintiff was then moved to another cell, then hog tied again from 10:00 p.m. to 5:00 a.m. (*Id.*)

Plaintiff's allegations regarding his placement in restraints, placement in a mace-covered cell, and sexual assault are entirely conclusory. Plaintiff's amended complaint is devoid of facts from which the Court could infer that Defendants Plowman, Leanhardt, Henry, Leithem, Jenkins, and Counsalium were personally responsible for leaving Plaintiff in restraints from 9:00 a.m. to 9:00 p.m. Nor does Plaintiff allege any facts from which the Court could infer that these individuals were responsible for placing Plaintiff in a mace-covered cell, sexually assaulting him, and then hog tying him again from 10:00 p.m to 5:00 p.m. Indeed, Plaintiff's reference to sexual assault is entirely conclusory.[3]

Furthermore, as set forth *supra*, Plaintiff sues all Defendants in their official capacities only. (Am. Compl., ECF No. 6, PageID.38–39.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will*

---

[3] In fact, many acts that may amount to sexual assault outside of prison do not amount to such inside prison. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661-62 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault). In light of that case law, Plaintiff's conclusory reference to sexual assault simply does not suffice to state a claim.

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments, such as the MDOC, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.[4] *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

      Plaintiff seeks injunctive and declaratory relief in the form of having pictures taken of his wrists ankles, and legs; receipt of medical attention; and "to be out of this inhumane treatment [and] living conditions." (Am. Compl., ECF No. 1, PageID.42.) An official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.") The Supreme Court has cautioned

---

[4] Plaintiff does not expressly seek an award of money damages. (Am. Compl., ECF No. 6, PageID.42.)

that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

In his amended complaint, Plaintiff vaguely suggests that he still has not received adequate medical attention for his injuries following the use of restraints. (Am. Compl., ECF No. 5, PageID.41.) He also contends that "they threw [him] in a cell with horrible living conditions." (*Id.*) Plaintiff's amended complaint, however, is devoid of any facts from which the Court could infer that any of the named Defendants are engaged in ongoing violations of federal law. As discussed *supra*, the facts alleged by Plaintiff suggest that he is now receiving medical treatment. Likewise, Plaintiff does not allege any facts suggesting that the named Defendants have continued to subject Plaintiff to "horrible living conditions." Although Plaintiff states that "they" put him in a cell with such conditions, Plaintiff's reference to "they" is insufficient to suggest that the named Defendants are engaged in ongoing violations of federal law because "[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill*, 935 F.3d at 518 (citation omitted).

Accordingly, because Plaintiff has not alleged that the named Defendants are engaged in ongoing violations of federal law, he cannot maintain his official capacity claims against Defendnats. For that reason alone, Plaintiff's Eighth Amendment claims premised upon the use of restraints and being subjected to horrible cell conditions will be dismissed.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed without prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610–11.

A judgment consistent with this opinion will be entered.


Dated:   September 24, 2025           /s/ Ray Kent
                                      Ray Kent
                                      United States Magistrate Judge